UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
INNOVATIVE SPORTS MANAGEMENT, INC. d/b/a
INTEGRATED SPORTS MEDIA,

                               Plaintiff,                                  **REPORT AND**
                                                                          **RECOMMENDATION**
           -against-                                        CV 19-1690 (JS)(AYS)

JUAN ACEVEDO, Individually, and as officer, director,
shareholder and/or principal of JADS DELI INC.,
d/b/a JUANITO DELI BAKERY & CAFÉ,

and

JADS DELI INC., d/b/a JUANITO DELI BAKERY
CAFÉ a/k/a JUANITO'S BAKERY & CAFÉ,

                               Defendants.
-------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Joanna Seybert for Report and Recommendation, is Plaintiff Innovative Sports Management, Inc.'s motion for default judgment. (Docket Entry ("DE") [18].) By way of a Complaint filed on March 25, 2019, Plaintiff commenced this action against Defendants Juan Acevedo and Jads Deli Inc., doing business as Juanito's Deli Bakery Café (collectively "Defendants"), and also known as Juanito's Bakery & Café, pursuant to the Communications Act of 1934, as amended, 47 U.S.C. §§ 605 et seq. (the "Communications Act"), the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. §§ 553 et seq., and the Copyright Act, 17 U.S.C. § 101 et seq. (Compl., DE [1].) After Defendants failed to answer or otherwise respond to Plaintiff's Complaint, the Clerk of the Court entered a notation of default against them on September 20,

1

2019.[1]  (DE [15].)  On November 22, 2019, Plaintiff filed a motion for default judgment, (DE [18]), which Judge Seybert referred to this Court for a recommendation as to whether the motion should be granted and, if so, to determine the appropriate amount of damages, costs and fees, if any, to be awarded.  (Elec. Order of Seybert, J., dated April 2, 2020.)  For the following reasons, this Court respectfully recommends that Plaintiff's motion be granted in part and denied in part and that Plaintiff be awarded damages as set forth herein.

## BACKGROUND

Plaintiff Innovative Sports Management Inc., doing business as Integrated Sports Media ("Plaintiff"), holds the copyright and exclusive broadcast and commercial distribution rights as to commercial establishments for the October 12, 2018 exhibition of Clasico del Pacifico: Peru vs. Chile, via closed circuit television, encrypted satellite signal and internet platforms (the "Broadcast").  (Jacobs Aff., DE [18-4], ¶ 3; Compl. ¶¶ 6, 17.)  Plaintiff's Broadcast originated via satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal.  (Compl. ¶ 18.)

For a commercial establishment to obtain lawful authority to publicly exhibit the Broadcast, it must enter into a licensing agreement with Plaintiff.  (Compl. ¶ 19; Jacobs Aff. ¶ 4.)  Upon payment of the appropriate fees, Plaintiff authorizes and enables the commercial establishment to unscramble and receive the satellite Broadcast.  (Compl. ¶ 19; Jacobs Aff. ¶ 4.)  The fees charged to authorize commercial establishments are based on the size of the establishment and its fire code occupancy.  (Jacobs Aff. ¶ 5 and Ex. A, annexed thereto.)

---

[1] Plaintiff's application for a notation of default requested that default be entered against "Juan Acevedo, et al." (DE [14].) While the docket reflects that a notation of default was only issued as to Defendant Juan Acevedo, it appears that was simply a clerical error and that the notation of default should have included both Defendants, as requested, in light of the fact that neither defendant answered or otherwise appeared in this action. (DE [15].)

The Broadcast was also available for non-commercial, private viewing through Plaintiff or its authorized online platforms for residential Pay-Per-View purchase and via the internet. (Compl. ¶ 20.) To obtain the Broadcast through a website intended for private, non-commercial viewing, an individual purchaser would be provided with terms of service that specifically state the viewing is for non-commercial, personal use only. (Id. ¶ 21.)

Plaintiff retained auditors to canvas and identify establishments that exhibited the Broadcast without authorization during its live exhibition window on October 12, 2018. (Jacobs Aff. ¶ 6.) A list of authorized establishments was provided to the auditors prior to their canvassing of establishments. (Id. ¶ 7 and Ex. B, annexed thereto.) Defendant Jads Deli Inc., doing business as Juanito's Deli Bakery Café ("Juanito's") was not included on Plaintiff's list of authorized establishments. (Id.)

On October 12, 2018, one of Plaintiff's auditors, Annemarie Lubrano ("Lubrano"), visited Juanito's, located at 113 Rockaway Avenue in Valley Stream, New York. (Jacobs Aff. ¶ 5.) While there, Lubrano observed one television exhibiting the Broadcast to patrons in an establishment with an estimated capacity of 1-50 patrons. (Id. ¶ 6 and Ex. C, annexed thereto.) Lubrano also video recorded the live exhibition of the Broadcast within Defendants' establishment. (Jacobs Aff. ¶ 6.) Defendants did not have a license or Plaintiff's authorization to exhibit the Broadcast. (Compl. ¶ 22; Jacobs Aff. ¶ 6.)

Plaintiff alleges that in order to exhibit the Broadcast, Defendants used a device to intercept and/or de-scramble Plaintiff's satellite signal of the Broadcast. (Compl. ¶ 22; Jacobs Aff. ¶ 8.) Specifically, Plaintiff asserts that Defendants ordered the Broadcast via Pay-Per-View, purporting to be a residential customer, and subsequently displayed the Broadcast in its commercial establishment. (Compl. ¶¶ 23-24; Jacobs Aff. ¶ 8.)

Plaintiff commenced the within action against Defendants on March 25, 2019. Despite being served with the Complaint on May 2, 2019 and May 22, 2019, neither of the Defendants answered the Complaint or otherwise appeared in this action. On September 20, 2019, the Clerk of the Court entered a notation of default against Defendants. (DE [15].) Plaintiff now seeks a default judgment against both Defendants and requests that the Court award damages under the Communications Act in the amount of $20,000, Copyright Act damages in the amount of $10,000, and attorney's fees and costs in the amount of $3,330.00. (Pl. Mem. Of Law 17.)

In support of its motion, Plaintiff has submitted a memorandum of law, the affidavit of its President, Doug Jacobs, the Site Inspection Report of its auditor, Lubrano, and the attorney affidavit of Julie Cohen Lowenstein, Esq. Defendants have submitted no papers in opposition.

## DISCUSSION

I.   Default Judgment Standard

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d. Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. See Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. See id.

Where a default occurs, the well-pleaded factual allegations set forth in the Complaint are deemed to be true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). However, "[i]t is well established that a party is not entitled to a default judgment as a

matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court." Allstate Ins. Co. v. Howell, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Ferrara v. Tire Shop Ctr., No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015). Accordingly, the district court must determine whether a plaintiff's allegations establish liability as a matter of law. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law.") (internal quotation omitted).

II.  Liability

    A.  Plaintiff's Claims Under the Communications Act

Here, Plaintiff seeks to hold Juanito's liable under Section 605(a). The well-pleaded and undisputed allegations of the Complaint as to Juanito's establish its violation of the statute. Specifically, Plaintiff alleges that it held the exclusive rights to distribute the Broadcast, which was distributed via closed-circuit television and encrypted satellite signal. (Jacobs Aff., DE [18-4], ¶ 3; Compl. ¶¶ 6, 17.) Juanito's did not obtain authorized access to display the Broadcast at its establishment from Plaintiff. (Jacobs Aff. ¶ 7 and Ex. B, annexed thereto.) Nevertheless, Plaintiff's auditor observed the Broadcast being shown at Juanito's to approximately five patrons on one television. (Jacobs Aff. ¶ 6 and Ex. C, annexed thereto.)

5

Taken as a whole, these allegations are sufficient to form the basis for Juanito's liability under Section 605(a). Accordingly, this Court respectfully recommends that Plaintiff's motion for default judgment be granted as to the commercial Defendant, Jads Deli Inc., doing business as Juanito's Deli Bakery Café, with respect to the Communication Act claim.

B. <u>Plaintiff's Claims Under the Copyright Act</u>

Plaintiff also seeks to hold Defendants liable for infringement under the Copyright Act. Section 106 of the Copyright Act gives owners of a copyright the "exclusive rights to do and to authorize the following: (1) to reproduce the copyrighted work in copies . . .; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . ." 17 U.S.C. § 106. Under the Copyright Act, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . ." 17 U.S.C. § 501. "To establish infringement of copyright, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Joe Hand Promotions, Inc. v. Maupin</u>, No. 15-cv-6355, 2018 WL 2417840, at *4 (citing <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 117 (2d Cir. 2010)).

Here, the Complaint alleges that "Plaintiff is the owner of the copyright to the Clasico del Pacifico: Peru vs. Chile Event scheduled for October 12, 2018, via closed circuit television and via encrypted satellite signal." (Compl. ¶ 37.) The Complaint further states that "[t]he Certificate of Registration was filed with the U.S. Copyright Office on January 14, 2019 under Registration Number PA0002139144." (<u>Id.</u>) Plaintiff has not provided the Court with a valid Certificate of Registration, issued by the United States Copyright Office, bearing the registration

6

number, which has been held to constitute prima facie evidence of the validity of the copyright. See Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980).

However, "[c]omplaints [for copyright infringement] simply alleging present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by the defendant, have been held to be sufficient" in the context of a motion to dismiss. E.g., U2 Home Entm't, Inc. v. Kylin TV, Inc., No. 06-CV-2770, 2007 WL 2028108, at *7 (E.D.N.Y. July 11, 2007) (citations omitted). Given that the facts alleged in the Complaint are deemed to be true in the context of a motion for default judgment, this Court finds that the same standard should be applied and that Plaintiff's allegations are sufficient to establish ownership of a valid copyright in the Broadcast.[2] Moreover, the same allegations in support of Plaintiff's Communications Act claim support a finding of copyright infringement by Juanito's. Accordingly, this Court recommends granting Plaintiff's motion for default judgment against Jads Deli Inc., doing business as Juanito's Deli Bakery Café, with respect to Plaintiff's Copyright Act claim.

C.   Individual Liability

Plaintiff also seeks to hold Defendant Juan Acevedo ("Acevedo") liable as the "Principal" of Juanito's. "Establishing individual liability under Section 605(a) requires a showing of either 'contributory infringement,' which arises when the individual 'authorize[d] the violation,' or 'vicarious liability,' which arises when the individual 'had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" J&J Sports Prod., Inc. v. McAdam, No. 14 CV

---

[2] Moreover, where a certificate of registration is presented, it merely shifts the burden of proof to defendant to demonstrate invalidity. See Prince Grp., Inc. v. MTS Prods., 967 F. Supp. 121, 124 (S.D.N.Y. 1997) (citations omitted). Having defaulted, Defendants have failed to rebut that presumption.

7

5461, 2015 WL 8483362, at *3 (E.D.N.Y. Feb. 9, 2015) (quoting J&J Sports Prods., Inc. v. Tellez, 11 CV 2823, 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011)) (additional citation omitted).

Here, Plaintiff alleges that Acevedo is "the individual with supervisory capacity and control over the activities occurring within . . . Juanito's Bakery & Café." (Compl. ¶ 9.) Plaintiff further alleges that Acevedo was "the individual with close control over the internal operating procedures and employment practices of . . . Juanito's Bakery & Café." (Id. ¶ 11.) However, the allegations and the evidence presented do not provide any basis for a finding that Acevedo was present during the unauthorized exhibition. Cf. Joe Hand Promotions, Inc v. Bernal, No. 18-CV-85, 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (finding that individual defendant, who "was present during the exhibitions," authorized the interception).

Moreover, Plaintiff makes no allegation concerning Acevedo's direct financial interest in the exploitation of the copyrighted material other than to allege that Acevedo "received a financial benefit from the operations of . . . Juanito's Bakery & Café." (Id. ¶ 10.) Such an allegation is insufficient to support a finding of liability with respect to Acevedo. See J&J Sports Prods., Inc. v. Espinal, No. 19-CV-5180, 2020 WL 2747981, at *3 (E.D.N.Y. May 26, 2020) ("A plaintiff fails to meet his or her burden of establishing vicarious liability by merely restating the legal standard without more factual information."); see also J&J Sports Prods., Inc. v. Shaw, No. 19-CV-2383, 2020 WL 1034361, at *3 (E.D.N.Y. Feb. 12, 2020), adopted by, 2020 WL 1031804 (E.D.N.Y. Mar. 3, 2020) ("A plaintiff is required to set forth some specific evidence to demonstrate the individual defendants' supervision of the infringing broadcast and his or her direct financial interest."). In addition, there are no allegations or evidence presented here that Juanito's charged a cover charge the night of the Broadcast. Nor are there allegations or

8

evidence that a premium surcharge was applied to food and drinks. In fact, the auditor did not even note whether Juanito's was selling food and drinks during the exhibition of the Broadcast. See J&J Sports Prods. Inc. v. LX Food Grocery Inc., No. 15-CV-6506, 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016) ("Plaintiff's auditor counted the number of patrons present during the Event . . ., but did not specify whether these patrons made any purchases."). Accordingly, "Plaintiff has not satisfied its burden of showing the 'obvious and direct financial interest' required to establish vicarious liability." LX Food Grocery, 2016 WL 6905946, at *3.

Based on the foregoing, this Court finds no basis to hold Acevedo liable under either a theory of contributory infringement or a theory of vicarious liability. As such, this Court respectfully recommends that Plaintiff's motion for a default judgment against Acevedo be denied.

## II. Damages

Once liability is established, the court must ascertain damages with "reasonable certainty." Credit Lyonnais Sec. (USA) Inc. v. Alcantara, 183 F.3d 151, 155) (2d Cir. 1999). "While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." Greyhound, 973 F.2d at 158 (citations omitted). Rather, damages must be proven, usually "in an evidentiary hearing in which the defendant has an opportunity to contest the amount" claimed. Id. An evidentiary hearing is not required, however, if there is a basis, by detailed affidavits and other documentary evidence, for the damages awarded. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d. Cir. 1997); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991). Plaintiff is "entitled to all reasonable inferences" from the evidence it offers. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

9

In cable piracy cases such as the one herein, if a court is unable to calculate actual damages, it will award statutory damages.  See Kingvision Pay-Per-View Ltd. v. Las Cazuelas Mexican Rest., No. 99-10041, 2000 WL 264004, at *2 (S.D.N.Y. Mar. 9, 2000) (awarding statutory damages where actual damages were not readily ascertainable).  Pursuant to 47 U.S.C. § 605, each violation of the statute entitles Plaintiff to damages ranging from $1,000.00 to $10,000.00.  See 47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition, 47 U.S.C. § 605(e)(3)(c)(ii) permits the Court to enhance the base award of damages up to $100,000.00 where a defendant is found to have willfully violated the statute for purposes of commercial advantage or private financial gain.  See id.

With respect to damages under the Copyright Act, a prevailing plaintiff must choose to recover either its actual damages or statutory damages between $750.00 and $30,000.00 per infringement, as the Court considers just.  See 17 U.S.C. § 504(b), (c)(1).  "[W]here the copyright owner sustains the burden of proving, and the court finds, that the infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00."  Id. § 504(c)(2).

III.   Calculation of Damages

    A.   Statutory Damages Under the Communications Act

The Court has discretion in awarding statutory and enhanced statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).  Courts in this District typically employ one of two methods when determining the amount of statutory damages to be awarded.  See McAdam, 2015 WL 8483362, at *4 (collecting cases).  "Under the 'flat-fee' method, the Court awards an amount based on the licensing fee defendants would have paid to show the [Program] legally and the balance of the equities."  Id. (citing cases).  "Under the 'per-person' method, the Court

10

calculates the amount of damages by multiplying the number of individuals who viewed the broadcast by the typical fee for a residential customer to view the fight." Id. (citing cases). The numbers from both calculations are then compared and statutory damages are awarded "in an amount equal to the greater of the two calculations." Id. (citing cases).

The affidavit of Doug Jacobs, Plaintiff's President, sets forth the basis for calculating damages under the flat-fee method. Specifically, Jacobs states that the license fee for an establishment the size of Juanito's would have been $750.00. (Jacobs Aff., Ex. A.) As to a per-person damages calculation, the Court assumes a $54.95 residential fee in light of evidence presented by Plaintiff in other cases. See McAdam, 2015 WL 8483362, at *4 (collecting cases). Lubrano's Site Inspection Report states that she observed five patrons present at Juanito's on October 12, 2018. (Jacobs Aff., Ex. C.) Multiplying this number by the $54.95 residential viewing fee results in statutory damages of $274.75. Like other courts in this District, this Court recommends that the Court exercise its discretion and award statutory damages in the greater of the two amounts, $750.00.

Plaintiff, however, incredulously seeks damages in the amount of $10,000.00, which is more than ten times the licensing fee. (Pl. Mem. of Law 9.) Not surprisingly, Plaintiff cites no case law to support its exorbitant request other than general standards on willfulness and deterrence. This Court finds Plaintiff's exorbitant request without merit and recommends awarding Plaintiff statutory damages in the amount of $750.00, as set forth above.

B.      Enhanced Damages Under the Communications Act

Section 605 provides that an additional award of not more than $100,000.00 may be given as "enhanced damages," where the violation was willful and committed for commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). According to Plaintiff's

President, the programming is not and cannot be "mistakenly or innocently intercepted." (Jacobs Aff. ¶ 7.) Courts have previously found that, as a matter of law, "[t]he broadcast of an event without authorization is a deliberate act, and thus establishes willfulness." J&J Sports Prods., Inc. v. Welch, No. 10-CV-0159, 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010) (citing Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997)). The Court therefore recommends finding that Juanito's violation of Section 605(a) is willful.

In determining whether willful conduct warrants an award of enhanced damages, courts consider a variety of factors "including whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." McAdam, 2015 WL 8483362, at *5 (citing cases). "Courts in this Circuit typically award enhanced damages as a multiple of the statutory damages award," including awards that are "equal to, double, or triple the statutory damages award." Id. (collecting cases).

Although Plaintiff has not presented evidence that Juanito's repeatedly violated Section 605, the evidence presented demonstrates that it exhibited the Broadcast to approximately five patrons on one television screen. (Jacobs Aff., Ex. C) In addition, Plaintiff's allegations as to damage to its reputation and goodwill also support an award of enhanced damages. See J&J Sports Prods, Inc.v. Big Daddy's Theme Palace, Inc., No. 14-cv-2765, 2015 WL 58606, *5 (E.D.N.Y. Jan. 5, 2015). After considering the facts presented and the relevant case law, this Court recommends awarding two times the statutory damages award, or $1,500.00, in enhanced damages. Such an award "will best provide an adequate recovery for Plaintiff and serve as a deterrent to future violations, without unduly penalizing Defendants." McAdam, 2015 WL

8483362, at *5 (citing cases).

  C.  Damages Under the Copyright Act

  Plaintiff elects to recover statutory damages under the Copyright Act, requesting that it be awarded $5,000.00.  (Pl. Mem. Of Law 14.)  In assessing the proper amount of statutory damages to award under the Copyright Act, "courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."  Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010).

While an award of damages under the Communications Act does not preclude recovery under the Copyright Act, see Joe Hand Promotions, Inc. v. Maupin, No. 15 Civ. 6355, 2018 WL 2417840, at *8 (E.D.N.Y. May 25, 2018) (noting that each statute "vindicates separate rights, and courts have found it proper to award damages under both Acts"), there appears to be no consensus within this Circuit as to the amount to award for a willful violation of the Copyright Act where the plaintiff is to receive a parallel award under the Communications Act.  See, e.g., Joe Hand Promotions, Inc. v. Levin, No. 18-CV-9839, 2019 WL 3050852, at * (S.D.N.Y. July 12, 2019) (reducing damages under Copyright Act to eighty percent of what was awarded under Communications Act); Maupin, 2018 WL 241780, at *9 (awarding $1,500.00 in statutory damages under Copyright Act and another $1,500.00 for willful behavior); Premium Sports, Inc. v. Nichols, No. 3:17-CV-0741, 2018 WL 3574870, at *8 (N.D.N.Y. July 25, 2018) (awarding $10,000 in statutory and enhanced damages under Copyright Act).  Based on the foregoing, this Court recommends that, in light of the damages award already recommended above, Plaintiff be

awarded $750.00 in statutory damages under the Copyright Act and another $750.00, based on Juanito's willful behavior, for a total award of $1,500.00.

IV.     Attorney's Fees and Costs

Pursuant to 47 U.S.C. § 605, an award of attorney's fees to a prevailing party is mandatory. See 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the Court "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails"). In the Second Circuit, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (emphasis in original). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill, 522 F.3d at 190-91 (holding that a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

The reasonableness of hourly rates is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney who worked on the action. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." Perdue, 559 U.S. at 552.

Here, Plaintiff seeks $1,722.50 in attorney's fees. Plaintiff's counsel has submitted the affidavit of its attorney, Julie Cohen Lowenstein, dated November 22, 2019, and contemporaneous billing records in support of its application. (DE [18-2].) Plaintiff seeks reimbursement for services rendered at a rate of $350.00 per hour for Ms. Cohen Lowenstein, $150.00 per hour for an associate attorney's time, and $95.00 per hour for paralegal time. (Cohen Lowenstein Aff. ¶¶ 13-14.) The time spent on this action by Plaintiff's counsel totals 12.6 hours. (Id. ¶ 14.)

Plaintiff's submission adequately sets forth the background and experience of each of the attorneys and the paralegal who billed time on this action. Moreover, as stated above, Plaintiff's application is supported by contemporaneous time records that detail the tasks the attorneys and the paralegal performed in connection with this action, as well as the time expended on each task. (Cohen Lowenstein Aff. ¶ 14.) Having reviewed the documents submitted, this Court finds

both the number of hours expended and the hourly rates to be reasonable.  See Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2013 WL 1760134, at *4 (E.D.N.Y. Apr. 24, 2013) ("In the Eastern District of New York, depending on the nature of the action, extent of legal services provided and experience of the attorney, hourly rates range from approximately $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates.") (collecting cases).  Accordingly, the Court respectfully recommends that Plaintiff be awarded $1,722.50 in attorney's fees.

Plaintiff also seeks reimbursement of expenses incurred in this action, which include the court filing fee, process server fees, and the auditing fee, totaling $1,607.50.  (Cohen Lowenstein Aff. ¶ 13.)  As stated above, an award of expenses is mandatory under Section 605.  See 47 U.S.C. § 605(e)(3)(B)(iii) (directing recovery of "the full costs" of the action).  This Court finds the expenses incurred by Plaintiff to be reasonable and respectfully recommends that Plaintiff be awarded its full costs in the amount of $1607.50.

Based on the foregoing, this Court respectfully recommends awarding Plaintiff attorney's fees and costs in the amount requested of $3,300.00.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part.  Specifically, the Court recommends that a default judgment be entered against the corporate defendant Jads Deli Inc., doing business as Juanito's Deli Bakery Café, but that the motion for default judgment be denied with respect to the individual defendant Juan Acevedo.  The Court further recommends that Plaintiff be awarded damages as follows: (1) statutory damages pursuant to the Communications Act in the amount of $750.00; (2) enhanced damages under the Communications Act in the amount of $1,500.00; (3)

16

statutory damages pursuant to the Copyright Act in the amount of $750.00; (4) damages for willfulness under the Copyright Act in the amount of $750.00; (5) attorney's fees in the amount of $1,722.50; and, (6) costs in the amount of $1,607.50, for a total monetary award of $7,080.00.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants at their last known address(es) and to file proof of service on ECF by June 5, 2020. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated: Central Islip, New York
June 4, 2020

/s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge